We'll hear one more case before our mid-morning break, and that will be United States v. Rios-Beltran. Council may begin whenever they're ready. You may proceed, counsel. I'm giving opposing counsel time to get ready. I'm sorry, Your Honor. I apologize. Good morning, Your Honors. Judge Graber, Judge Hugg, Judge Clifton, thank you for inviting us here today. I stand before you on behalf of Roberto Rios-Beltran, a man who has Hispanic nativity and had returned to the United States when he shouldn't have. I'm Wade Curtis from Boise, Idaho. I'm a CJA appointed counsel for Roberto Rios-Beltran. What we're asking for we can't give back to Mr. Beltran. He had already served about six months at the time of sentencing and now has served an additional nine months. And so to give back to him the time that he is hopefully you would find misserved is going to be impossible because it's time served. But it is important, I think, because we have a sentencing scheme in Oregon that we believe mirrors the sentencing or similar to the sentencing issues that arise in Arizona. Fortunately, in my experience, Roberto's case is the first one involving the aggravated felony enhancement on the sentencing because of an Oregon prior conviction. But this is a matter that can come up again and therefore needs the court's attention to decide it. The analysis followed by Judge George, who was visiting in our district as a visiting judge, was that you look solely at the label put on an offense by the state. And since the possession of drugs under the Oregon statute was a Class C felony, that the felony classification thus gave the 16 or the 8-level enhancement under the guidelines. It's more than a label, isn't it? Isn't the statutory maximum sentence up to five years of imprisonment? Well, yes, Your Honor. And I understand that. And that's the argument on the other side. But so what – when we look at the question whether a particular crime is or is not in the felony classification, don't we look at the statute and what kind of punishment is permissible under the statute and not at what happens to an individual person? In other words, a person may be convicted of a felony, but given probation, but that doesn't mean they're not convicted of a felony. I guess that's my problem with the argument. Judge Graber, that's true. And I agree with that. In Arizona – and you've written the opinion in two of our significant cases or our lead cases, and Judge Huggs was on the panel with you. In Arizona, the Proposition 200 imposes on the court an obligation to impose no confinement that's greater than a year and a day. Under the Oregon sentencing guidelines, which mirror the Federal sentencing guidelines, the judge is obligated to impose only 90 days jail with a probationary sentence. Well, isn't there a distinction, though, between what the statute requires, which cannot be departed from, and sentencing guidelines that are not – that are not the statute? In other words, the statute still allows up to five years of prison time, even though there are sentencing guidelines. And, Your Honor, that's the step we want you to make here in this case based on the steps you've already taken. And I say you because you've been the lead author in two of those cases, but this court in general as the Ninth Circuit, that there's no difference in the Oregon scheme where the judge has to find substantial factors before he can depart or she can depart in the sentencing scheme, that just as in Arizona, the amount of punishment that the court can impose without some external factor must be considered. In Arizona, I think there's no – it's not a guideline. In Arizona, you can't do it. You may have all kinds of great reasons, but you can't do it. And in Oregon, if you have great reasons, you can give more time. And I guess that – why isn't that a meaningful distinction? Well, and that's where we come to the recidivist argument. And that's been raised in our brief, that the court has held that even the enhancements that would come from a recidivist statute must be ignored when we look at the enhancements under the sentencing guidelines. The fact that a particular accused may be punished for numbers of years because of a second and third conviction must be ignored, and we look solely at the underlying offense. And this case was the petty theft one, but he had had three priors or two priors and therefore got a three-year sentence. But the court specifically said we ignore those recidivist enhancements and look at what the individual could get for the underlying offense. And that would be our argument, Your Honor, in that regard. Again, the issue of whether or not this mirrors the Arizona statute, as Your Honor has mentioned, it clearly doesn't mirror because we've got the sentencing guidelines. But nevertheless, it is the intent of the people of Oregon that certain punishments be given. And I think this is significant from this court's prior looking at the legislative intent that if the underlying offense would not be punishable by more than a year and a day under the federal statute, that likewise it is not an aggravated felony under the guidelines. And therefore, we also have that argument to support the four-level enhancement as opposed to an eight-level enhancement. Subject to your questions, Your Honors, I reserve the remaining three minutes for rebuttal. You certainly may do that. Thank you, Your Honor. Mr. Burrow? May it please the Court, I'm Alan Burrow from the U.S. Attorney's Office in Boise, Idaho. On behalf of the United States, I would respectfully submit to the Court that counsel is mistaken in his statement that the district court judge here looked solely to the Oregon State label of felony or misdemeanor. What Judge George held was that whether an offense is punishable by more than a year is not defined by the sentencing guidelines applicable to the offense but by the statutory maximum sentence, which I believe is the issue here. I would point out to the Court that the Oregon State case, which is cited in the government brief, a court of appeals case, has just in the last few days been affirmed by the Oregon Supreme Court. That's the Oregon v. Dilts, D-I-L-T-S case. It doesn't have a reporter site yet, but it's at 2003 Westlaw, 229-662-64, decided on December 18, 2003. That was an Apprendi case where the Oregon Supreme Court had to decide whether certain factors carried a sentence beyond the maximum permissible punishment for Apprendi purposes, and there the Oregon Supreme Court held that the maximum sentence for Apprendi purposes is that prescribed by the statute in Oregon categorizing the various levels of felonies, which is Oregon Statute 161.605, not by the Oregon sentencing guidelines. And there the court stated that the statutory maximum penalty exists outside the presumptive sentencing framework of the guidelines and indeed outside the guidelines themselves. So in Oregon, according to Oregon's own Supreme Court, it is a different situation than what we find in Arizona, where by Proposition 200, which was a popular referendum, as this court found in the Robles-Rodriguez case, the populace of Arizona there not only made some differences, but they changed Arizona's drug control policy by treating drug abuse and simple possession as a medical problem as opposed to a penal problem. In other words, this represented a sea change in Arizona law. It was not tantamount to a sentencing guideline scheme, which was enacted to guide or to restrict the sentencing judge's discretion. This was tantamount to a complete change of the statutes that defined and prescribed punishment for the offenses. I think it's significant that in Robles-Rodriguez, the court there cited Ibarra-Galindo and followed that opinion for the basic principle that an offense which is a misdemeanor on the federal level can nevertheless be an aggravated felony if it is a felony, i.e., punishable by more than a year imprisonment in the state. And it distinguished Ibarra-Galindo by saying that in Ibarra-Galindo, the state offense there was clearly a felony. It was labeled as such and was punishable by up to five years imprisonment. Now, the court there was referring to the Ibarra-Galindo opinion at footnote one, where the Ibarra-Galindo panel looked to the statute, the maximum permissible punishment under the statute, not the sentencing guidelines of the State of Washington, to determine for aggravated felony purposes what the maximum permissible punishment was. What if the guidelines as they're provided mean that you could not serve any more than a year? For example, I'm looking at the guideline 213-008-0003-2, which says, a durational departure from a presumptive term, that would be the 90-page presumptive term, shall not total more than double the maximum duration of the presumptive prison term. So the judge couldn't sentence more than that. The way I read that, it would be 90 days plus double 90 days, which would be 180, and the total would be 270. So could a judge sentence more than 270 days? Your Honor, I don't know. And I think that's one of the main points here. I don't think that Congress or the Sentencing Guideline Commission intended this court or all the district courts to become experts in all the state sentencing guideline schemes in the circuit in order to be able to apply our already complicated sentencing guidelines at the federal level. I think the key is we look to the statutory maximum permissible punishment, which in this case is five years. We do not look to the guidelines, which operate within those outer boundaries, to direct the discretion of the sentencing judge. Even if it were not possible that he would serve more than a year still under your view an aggravated felony? Yes, Your Honor. And I would point out that, for example, in the Ballesteros-Ruiz decision, of course we have two prongs in these aggravated felony cases. We've got the federal prong and the state prong, and if the offense is punishable by more than a year on either prong, then it would qualify as an aggravated felony. I think it's significant that the Ballesteros-Ruiz panel, which was dealing with the same Arizona law, the same Arizona Proposition 200, on the federal prong, where did the panel look to determine whether the offense was punishable by more than a year? It looked to 21 U.S.C. Section 844A. It did not look to the federal sentencing guidelines. It looked to the statutory maximum permissible punishment. And then on the state side, it looked to Proposition 200. I would submit that what we have in the Ballesteros-Ruiz decision, and indeed in the Robles-Rodriguez decision, is an implicit acknowledgment that Proposition 200 was not the equivalent of a sentencing guideline scheme. It was the equivalent of a statutory change. And indeed, Proposition 200 itself provides that it is a policy change, a philosophy change for the Arizona law. I have a question for you about your view of the nature of the Oregon sentencing guidelines. There's a grid, and one piece of it is the crime seriousness level, which has a number, and then there's the criminal history score, which has letters. And this defendant, I think, had a very low criminal history score. If you go to more extensive criminal history, the amount of presumptive prison time or jail time goes up. Does that count in our analysis for anything, or is that just a recidivist piece that we have to ignore under our case law? Well, Your Honor, I think the most fundamental proposition is that we look to the statutory maximum, not to the guidelines. But then I think that it is significant, though. It is a distinction, for example, from the Arizona situation, that the judge under the Oregon scheme can depart upward. Well, I'm not really talking about the departure piece of it. There's a higher presumptive sentence without departure if the person has a longer criminal history, not necessarily recidivist as to this crime, but just in general a history of doing crimes of various kinds. Is that the same as a recidivist provision, or is there something different about that? I think that's different. The recidivist decision in the Ninth Circuit was dealing with the federal statutes, that under 21 U.S.C., the maximum punishment under the statute, not under the guidelines, but under the statute goes up with prior convictions. And the Ninth Circuit held that, well, for purposes of aggravated felony, we're looking at the basic offense itself. We're not looking at statutory recidivist provisions, which ratchet up the maximum punishment. But I would argue that this reinforces my fundamental point here, which is that long history with the United States courts on very important constitutional issues, and the Robles Rodriguez opinion points this out, in determining when a defendant must be indicted, when a defendant has a right to a jury trial, when a state must provide counsel, all these things turn on whether the offense is punishable by more than a year. And historically, the courts have always looked to the maximum permissible punishment under the statute of conviction, not to some other scheme that comes over within that to guide the judge's discretion. Thank you, counsel. Thank you. Go ahead. I just have one thing that I would – I can't resist pointing it out. You mentioned Robles Rodriguez, and you say in the brief, in Robles Rodriguez, the Court considered a unique legislative situation in which the Oregon voters have passed a ballot in which they call Proposition 200, which requires the Arizona courts to sentence nonviolent persons convicted, et cetera. That would be unique if the – Yes, Your Honor. That's a mistake, and I apologize to the Court. Thank you. Well, I'm sorry. I just couldn't resist. Mr. Curtis, you have a little time remaining. Thank you, Your Honor. In defense of my good, worthy opponent, Mr. Borrow, the brief was written by another member of the office, Judge, and not by Mr. Borrow. But I've noticed that, too, and I've got plenty of errors in there, and not one to cast stones at them. I've been – I think in this area we need to be very precise with our language, and I have not been precise in my language in my brief in several areas. The Court has, on previous occasions, said that a misdemeanor, a state misdemeanor, can be the basis for an enhancement under this guideline by being an aggravated offense if that misdemeanor, notwithstanding it being labeled that, can be punished by more than a year. And so, to me, this concept which I started with of the label is an important concept. I don't think anyone quarrels with that. Okay. The question is whether this is a crime punishable by up to five years in prison, as the legislature says, or whether it's something less than that, which is lower than a year. Do you have a copy of the entire Oregon sentencing grid with you, by any chance? No, I didn't. It's almost as long as the federal, and I didn't. I was wondering if, this is a similar question that I asked opposing counsel, and that is, depending on the person's criminal history, what's the guideline's longest sentence for this crime, if he had a different criminal history? I did not bring that table to the podium, but it's in our appendices. It's a last exhibit, I believe, in our appendices. And my recollection for this particular offense, it didn't go over a year, but I would want to go and retrieve it and look at it. But if you get to that upper end, let's say it's eight months, then applying discretion, a trial judge could say, well, 16 months for you. If you use the upward departure analysis and doubled it, as Judge Hug mentioned earlier. Again, we'd also go back to the principles that this court has already espoused, and that part of this is what do the people intend to be that maximum punishment, and that the court has on occasions said that the federal statute controls also, because had this been brought under the federal statute, he would not have been eligible for more than a year. And therefore, under the guidelines, that likewise he should have the four-level reduction or enhancement as opposed to the eight. Subject to your questions, Your Honors. Thank you so much for the day. Thank you very much. The case just argued is submitted. We will take a short break and return in five to ten minutes. All rise.
judges: Hug, Graber, Clifton